# United States Court of Appeals
*for the*
# First Circuit

---

Case No. 24-1443

DRAFTKINGS INC.,

*Plaintiff-Appellee,*

v.

MICHAEL HERMALYN,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS, BOSTON, IN CASE NO. 1:24-CV-10299-JEK,
HONORABLE JULIA ELEANOR KOBICK, JUDGE

## REPLY BRIEF FOR DEFENDANT-APPELLANT

CHRISTOPHER G. MICHEL
GREGG M. BADICHEK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000

-and-

ALIKI SOFIS
ALEXANDER S. DEL NIDO
ISAAC SAIDEL-GOLEY
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, Massachusetts 02199
(617) 712-7100

-and-

RUSSELL BECK
STEPHEN D. RIDEN
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
(617) 500-8660

*Attorneys for Defendant-Appellant*

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ...................................................................................4

I.    CALIFORNIA LAW APPLIES TO DRAFTKINGS' CLAIM TO
      ENFORCE THE NON-COMPETE COVENANTS ......................................4

      A.    Applying Massachusetts Law Would Contravene Fundamental
            California Public Policy ......................................................5

      B.    California Has A Materially Greater Interest In This Dispute
            Than Massachusetts...........................................................6

      C.    California Law Would Apply To This Litigation In The
            Absence Of A Contractual Selection Of State Substantive Law ........15

II.   ANY PRELIMINARY INJUNCTION ENFORCING THE NON-
      COMPETE COVENANT SHOULD EXCLUDE CALIFORNIA .............23

      A.    Hermalyn Preserved His Argument That Any Injunction Should
            Exclude California.............................................................24

      B.    Comity And Federalism Considerations Support Excluding
            California From The Preliminary Injunction ......................................25

CONCLUSION ................................................................................27

CERTIFICATE OF COMPLIANCE WITH RULE 32(g) ......................................28

CERTIFICATE OF SERVICE ...........................................................29

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*A.M. Capen's Co. v. Amer. Trad. Prod. Corp.*,
  74 F.3d 317 (1st Cir. 1996)...............................................................................18

*Application Grp., Inc. v. Hunter Grp., Inc.*,
  61 Cal. App. 4th 881, 72 Cal. Rptr. 2d 73 (1998) ................................11, 12, 21

*Aspect Software, Inc. v. Barnett*,
  787 F. Supp. 2d 118 (D. Mass. 2011)..............................................................7, 8

*Barnes Group, Inc. v. C & C Products, Inc.*,
  716 F.2d 1023 (4th Cir. 1983) .....................................................................25, 26

*Bushkin Assocs. v. Raytheon Co.*,
  393 Mass. 622, 473 N.E.2d 662 (1985).........................................................18, 19

*Dahua Tech. USA Inc. v. Feng Zhang*,
  988 F.3d 531 (1st Cir. 2021)...............................................................................16

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937, 189 P.3d 285 (2008).................................................................5

*Feeney v. Dell Inc.*,
  454 Mass. 192, 908 N.E.2d 753 (2009)...........................................................4, 10

*Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*,
  968 F.2d 1463 (1st Cir. 1992).....................................................................*passim*

*Hendricks Associates, Inc. v. Daewoo Corp.*,
  923 F.2d 209 (1st Cir. 1991)...............................................................................18

*Hermalyn et al. v. DraftKings, Inc.*,
  2024 WL 944260 (C.D. Cal. Feb. 8, 2024) .......................................................12

*Hermalyn et al. v. DraftKings, Inc.*,
  No. 24STCV02694 (Cal. Super. Ct. June 13, 2024) ...........................................6

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
  270 F.3d 298 (6th Cir. 2001) .............................................................................26

*Keener v. Convergys Corp.*,
    342 F.3d 1264 (11th Cir. 2003) ..........................................................26

*Liberty Mut. Ins. Co. v. Correia*,
    100 Mass. App. Ct. 629, 182 N.E.3d 962 (2022) ................................7

*Montañez-Allman v. García-Padilla*,
    782 F.3d 42 (1st Cir. 2015)...............................................................25

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000)...........................................................................24

*NuVasive, Inc. v. Day*,
    954 F.3d 439 (1st Cir. 2020)..............................................................14

*Realogy Holdings Corp. v. Jongebloed*,
    957 F.3d 523 (5th Cir. 2020) ...............................................................7

*Reicher v. Berkshire Life Ins. Co.*,
    360 F.3d 1 (1st Cir. 2004)..................................................................14

*Oxford Glob. Res., LLC v. Hernandez*,
    480 Mass. 462, 106 N.E.3d 556 (2018).......................................*passim*

*Rizzo v. Goode*,
    423 U.S. 362 (1976)...........................................................................25

*Roll Sys., Inc. v. Shupe*,
    1998 WL 1785455 (D. Mass. Jan. 22, 1998)....................................22

*Van Dorn Retail Mgmt., Inc. v. Jim's Oxford Shop, Inc.*,
    874 F. Supp. 476 (D.N.H. 1994).......................................................16

*Viscito v. Nat'l Planning Corp.*,
    34 F.4th 78 (1st Cir. 2022)................................................................18

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020)................................................4, 14, 18, 21

## Statutes

Cal. Bus. & Prof. Code § 16600 ...............................................................8

Cal. Bus. & Prof. Code § 16600.5 .............................................................5

iv

M.G.L. c. 149 .............................................................................8, 9, 10, 20

## **Regulations**

16 C.F.R. § 910 .......................................................................................23

## **Other Authorities**

Jerry Cohen *et al.*, *Employee Noncompetition Laws and Practices: A Massachusetts Paradigm Shift Goes National*,
103 Mass. L. Rev. 31 (2022) ...........................................................8, 9

*Restatement (Second) of Conflicts of Laws* § 6 (1971) ...........................................20

*Restatement (Second) of Conflicts of Laws* § 187 (1971).......................................15

*Restatement (Second) of Conflicts of Laws* § 188 (1971)...........................19, 20, 21

## PRELIMINARY STATEMENT

DraftKings' answering brief strains to avoid acknowledging that Michael Hermalyn is a California resident and California employee of a California company who allegedly breached his non-compete covenant in California—the reason that DraftKings sued him in this case. DraftKings likewise downplays (waiting until page 43 to even mention) the new California statutes that deliberately encourage workers to do what Hermalyn did—move to California for a better job—and expressly protect them from suits by employers like DraftKings. But under applicable choice-of-law principles, neither California's fundamental policy interests in open competition and freedom of movement nor its close geographic connections to this suit can be ignored. Because California's interests and connections far exceed those of Massachusetts, California law should apply.

DraftKings devotes much of its brief to recounting aspects of the preliminary injunction that Hermalyn disputed below but does not challenge in this appeal, such as the bars on disclosing confidential information and soliciting DraftKings employees. When DraftKings turns to the provisions of the preliminary injunction before this Court, it urges affirmance principally based on dicta in this Court's 32-year-old decision in *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 968 F.2d 1463 (1st Cir. 1992). But neither DraftKings' district court briefs nor that court's opinion granting the preliminary injunction even mentioned *Ferrofluidics*,

1

let alone relied on it.  That is for good reason:  *Ferrofluidics* did not apply the choice-of-law test at issue in this case to facts like those presented here.

*Ferrofluidics* turned on the "no substantial relationship" branch of the public-policy exception to a contractual selection of substantive state law, which the parties agree is inapplicable here.  *Id.* at 1467; *see* Answer. Br. 28; Op. Br. 18 n.9. *Ferrofluidics* involved a worker who—unlike Hermalyn—was based in the same state as the employer's headquarters.  968 F.2d at 1466-67.  And neither *Ferrofluidics* nor any other precedent created a rigid rule freezing the choice-of-law analysis at the moment the contract was formed, as DraftKings incorrectly suggests. Massachusetts instead follows a functional choice-of-law approach, guided by the multi-factor standards of the *Restatement (Second) of Conflicts of Laws*.  *Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 468-69, 106 N.E.3d 556, 564 (2018). Those factors allow consideration of post-contracting developments, including the location of the "breach of the agreement," which is after all the basis for the lawsuit. 480 Mass. at 468, 106 N.E.3d at 563.

Applying the proper analysis here, California law governs.  DraftKings does not dispute that applying Massachusetts law "would be contrary to a fundamental policy of" California.  480 Mass. at 468-69, 106 N.E.3d at 564.  California "has a materially greater interest than" Massachusetts "in the determination of the particular issue" in the case, because California is Hermalyn's state of residence and

2

employment and its policy on enforcement of non-compete covenants is stronger than any Massachusetts policy. *Id.* And California law would apply in the absence of a contractual selection of law because it has "the most significant relationship to the transaction and the parties." *Id.* While Hermalyn lives and works in California, he *never* lived in nor was ever based in Massachusetts, a problem DraftKings implicitly concedes by artfully describing him as an "East-Coast-based employee." Answer. Br. 7. Simply put, the district court's application of Massachusetts law would effectively nullify the statutes enacted by the California legislature for cases just like this one, with no commensurate benefits for Massachusetts. No applicable choice-of-law principle supports that result.

Principles of comity and federalism, moreover, cut sharply against application of the preliminary injunction to California. DraftKings does not seriously dispute that federal courts must account for those principles in shaping equitable relief. It instead asserts that Hermalyn failed to raise this argument below, but Hermalyn devoted an entire section of his opposition brief to narrowing the requested injunction, and he has relied on comity and federalism principles throughout the litigation. Accordingly, if the Court does not apply California law to DraftKings' claims seeking enforcement of the non-compete covenant against Hermalyn, it should at least respect California's contrary public policy by excluding that state from the resulting injunction.

**ARGUMENT**

## I.   CALIFORNIA LAW APPLIES TO DRAFTKINGS' CLAIM TO ENFORCE THE NON-COMPETE COVENANTS

DraftKings ultimately agrees with Hermalyn on the basic legal framework applicable to its claims.  Under Massachusetts choice-of-law principles, California law governs DraftKings' claim to enforce its non-compete covenants against Hermalyn notwithstanding the contractual selection of Massachusetts law if:  (1) applying Massachusetts law would contravene fundamental policy of California, (2) California has a materially greater interest than Massachusetts in the dispute over that enforcement, and (3) California law would apply in the absence of a choice-of-law provision because it has the most significant relationship to the determination of that dispute.  *Oxford*, 480 Mass. at 469, 106 N.E.3d at 564.  This Court and others have repeatedly held that contractually selected state law must be "oust[ed]" in such situations, *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 35 (1st Cir. 2020), no matter how many times a party repeats that a contract was signed, *cf.* Answer. Br. 3, 9-10, 26; *see also, e.g.*, *Oxford*, 480 Mass. at 468-69, 106 N.E.3d at 564; *Feeney v. Dell Inc.*, 454 Mass. 192, 206-07, 908 N.E.2d 753, 766-67 (2009).

As Hermalyn demonstrated (Op. Br. 16-32), all three of those requirements are satisfied here.  DraftKings concedes the first.  It disputes the second only by taking a position that would nullify the recently enacted California statutes.  And it contests the third by misreading *Ferrofluidics*—which neither it nor the district court

even mentioned below—to reach far beyond its holding and conflict with binding Massachusetts precedent. Those strained arguments fail. California law applies.

### A. Applying Massachusetts Law Would Contravene Fundamental California Public Policy

DraftKings does not dispute that "the fundamental public policy of California favoring open competition and employee mobility" would be contravened by "application of Massachusetts substantive law to this employment dispute." *Oxford*, 480 Mass. at 463, 106 N.E.3d at 560. California law has long treated non-compete covenants as void and their attempted enforcement as anti-competitive. *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945-46, 189 P.3d 285, 290-91 (2008). That fundamental public policy has only grown clearer and more applicable given California's new statutes that expressly make non-compete covenants "unenforceable regardless of where and when the contract was signed," and "regardless of whether the parties signed the contract and whether the employment was maintained outside of California." Cal. Bus. & Prof. Code § 16600.5(a), (b).

As specified in the statutory text, that policy reflects California's "strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ," A145, Add.65 (§1(f)), and "trumps other state laws when an employee seeks employment in California, *even if the employee had signed the contractual restraint while living outside of California and working for a non-California employee*," *id.* (§1(e)) (emphasis added). The committee drafting the

5

legislation made even more explicit that its object was to influence courts' choice-of-law determinations.  *See* Add.70-71 (§13).  In short, California's new statutes were tailor-made for cases like this one—as the California court hearing Hermalyn's claims against DraftKings has confirmed.  Op. Br. 12-13.[1]

## B.    California Has A Materially Greater Interest In This Dispute Than Massachusetts

While not directly contesting California's fundamental public policy to attract and protect employees like Hermalyn, DraftKings fails to give either that policy or California's geographic connections to the dispute any meaningful weight.  He instead relies on the more ambivalent policies and geographic connections of Massachusetts, where Hermalyn never lived and was never based.  That approach simultaneously undervalues California's interest and overvalues Massachusetts' interest in the determination of DraftKings' claim to enforce the non-compete

---

[1]    DraftKings incorrectly suggests that the California court has "rebuffed" Mr. Hermalyn's "efforts."  Answer. Br. 22.  The opposite is true.  At a hearing held on June 13, 2024, the California court agreed that Mr. Hermalyn and Fanatics were properly seeking a "battling order," rather than an advisory opinion, and further determined that an order to show cause on their pending motion for a preliminary injunction was appropriate.  *See* Tr. at 52:19-21, 70:17-20; *Hermalyn et al. v. DraftKings, Inc.*, No. 24STCV02694 (Cal. Super. Ct. June 13, 2024); *see also* Notice of Lodging, *Hermalyn et al. v. DraftKings, Inc.*, No. 24STCV02694 (Cal. Super. Ct. June 17, 2024).  Accordingly, the California court set July 17, 2024, as the hearing date for Mr. Hermalyn's and Fanatics' motions for (i) a preliminary injunction; and (ii) an expedited trial on their declaratory judgment claim.  Min. Order at 2, *Hermalyn et al. v. DraftKings, Inc.*, No. 24STCV02694 (Cal. Super. Ct. June 13, 2024).

covenant against Hermalyn.  Properly weighed, California has a materially greater interest from both policy and geographic standpoints.  *See* Op. Br. 24-28.[2]

1.  ***Policy interests.***  DraftKings begins by trying to minimize California's policy interests, but its attempts fail.  DraftKings invokes (Answer. Br. 41-42) the district court decision in *Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118 (D. Mass. 2011), which applied a contractual selection of Massachusetts law over California law.  But DraftKings omits the reason the court in *Aspect Software* found that California did not have a materially greater interest than Massachusetts:  the non-compete clause in that case was "*tailored in such a way as to avoid implicating California's fundamental policy against broad non-competition agreements.*"  *Id.* at 126 (emphasis added) (citation omitted).  Here, DraftKings does not (and cannot) contend that its sweeping non-compete covenant is tailored to avoid implicating California's fundamental public policy in the enforcement of such covenants.  To the contrary, DraftKings resists (Answer. Br. 51-54) efforts to tailor the injunction

---

[2]   DraftKings questions which "issue" should be the subject of the materially-greater-interest inquiry.  Answer. Br. 41 (quoting *Liberty Mut. Ins. Co. v. Correia*, 100 Mass. App. Ct. 629, 632, 182 N.E.3d 962, 966 (2022)).  But as DraftKings appears to recognize, the "issue" is enforcement of the non-compete covenants.  *See id.* (contending that this Court should affirm "because *enforcing Hermalyn's noncompetition agreements* would not violate a fundamental policy of any state with 'a materially greater interest' than Massachusetts 'in the determination' *of that issue*") (emphasis added) (citation omitted); *accord, e.g.*, *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 533 (5th Cir. 2020) (applying the inquiry to "the enforceability of the non-competition agreement in this matter").

enforcing the non-compete covenant to account for California's policy interests. *Aspect Software* thus undermines DraftKings' effort to limit California's policy interest in the enforcement of the non-compete covenants at issue here.

DraftKings also acknowledges (Answer. Br. 43-45) that the Massachusetts Supreme Judicial Court (SJC) held in *Oxford* that California law applied to a non-compete agreement selecting Massachusetts law because Massachusetts "has no comparable legislative policy favoring open competition and employee mobility, and no statute akin to Cal. Bus. & Prof. Code § 16600." *Oxford*, 480 Mass. at 470, 106 N.E.3d at 565. Recognizing the problems created by that authoritative holding, DraftKings implausibly attempts (Answer. Br. 45) to dismiss the 2018 *Oxford* decision as "outdated (and now inaccurate)" following Massachusetts' enactment of the Massachusetts Noncompetition Agreement Act (MNAA), M.G.L. c. 149, § 24L. But DraftKings makes no attempt to argue that the MNAA changed Massachusetts' law or policy of limited tolerance towards non-compete covenants. Indeed, the MNAA placed additional restrictions and requirements on non-competes. *E.g.*, M.G.L. c. 149, § 24L(b)(iv) (restricting non-competes to 12 months); *id.* § 24L(c) (prohibiting non-competes for certain employees). And in any event, the MNAA did not purport to abrogate Massachusetts law as discussed and understood in *Oxford*; to the contrary, it "codified aspects of the common law that will continue to require case-by-case exposition." Jerry Cohen *et al.*, *Employee Noncompetition*

8

*Laws and Practices: A Massachusetts Paradigm Shift Goes National*, 103 Mass. L. Rev. 31 (2022).

DraftKings' suggestion that *Oxford*'s assessment of Massachusetts' interest in enforcement of non-compete covenants is no longer good law because it predates the effective date of the MNAA also cannot be correct. If SJC decisions from 2018 were abrogated by the MNAA (also enacted in 2018), so too was *Ferrofluidics* (decided in 1992) and almost every other case that DraftKings relies on. For that matter, if the MNAA's purported changes to Massachusetts law are relevant to the interest balancing, then so too are the new California statutes that took effect earlier this year—and that undisputedly express a fundamental policy and have far clearer application to this case than does the MNAA. *See* pp. 5-6, *supra*.

Attempting to bolster the strength of Massachusetts' policy, DraftKings cites a provision of the MNAA (Answer. Br. 44) that nullifies choice-of-law provisions that "avoid" the MNAA's requirements for employees who have resided or been employed "in Massachusetts" for at least 30 days before the termination of their employment. M.G.L. c. 149, § 24L(e). Under that provision, if an employee leaves his or her job with another employer and seeks the protection of the MNAA, choice-of-law provisions selecting non-Massachusetts law will not be enforced if the employee has been a resident of or employed in the Commonwealth for 30 days. But that provision has no application here, because Hermalyn was never a

Massachusetts-based employee or resident.  If anything, the MNAA provision only reinforces that Massachusetts—like California—will protect employees who move into the state, without any lengthy durational requirement.

Ultimately, DraftKings makes no headway in attempting to equate Massachusetts' policy interests with California's.  By any plausible measure, California's deep and fundamental policy interest in the non-enforcement of non-compete covenants—expressed emphatically in recently enacted statutes—far exceeds any Massachusetts policy interest on the subject.  *See, e.g.*, *Feeney*, 454 Mass. at 206-07, 908 N.E.2d at 766-67 & n.32 (holding that a state's "materially greater interest" in a contractual relationship "is subsumed with [the] argument that the fundamental public policy" of that state is at stake).

**2.    *Geographic connections.*** DraftKings also fails to minimize California's self-evident geographic connections to the attempted enforcement of the non-compete covenant, which is based on conduct by Hermalyn in California while residing in California and working for a California company.  DraftKings recognizes (Answer. Br. 47) the parallel between this case and *Oxford*, where the SJC applied California law over a contractual selection of Massachusetts law in part because the employee there "executed, performed, and allegedly committed a breach of the agreement in California."  480 Mass. at 471, 106 N.E.3d at 566.  While DraftKings again attempts to distinguish *Oxford*, its own admissions defeat its effort.

10

DraftKings concedes (Answer. Br. 42) that Hermalyn's alleged breach "occurred in part in California," and does not contest Hermalyn's showing (*see* Op. Br. 27) that *California* is the "place of performance" because the claims arise from Hermalyn's alleged activities there. *Oxford*, 480 Mass. at 467, 106 N.E.3d at 563 (subject matter of non-compete covenant was California where plaintiff alleged defendant "committ[ed] a breach of the agreement in California") (internal quotation marks omitted); *see Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 904, 72 Cal. Rptr. 2d 73, 87 (1998) (equating "the subject matter of the contract" with "employment by a competitor who is 'located' in California").

DraftKings asserts (Answer. Br. 47-48) that Hermalyn should not be allowed to "flee[]" to California. But what DraftKings denounces as fleeing, California views as competition; the purpose and express language of California's statutes is to encourage employees like Hermalyn to work for California employers unconstrained by out-of-state non-compete covenants. DraftKings protests (Answer. Br. 47) that "Hermalyn has not identified a single case" in which a court has applied California law after an employee made such a move. To the extent DraftKings is referring to cases decided under the California statutes that went into effect roughly six months ago, it is hardly surprising that no on-point decision yet exists. More broadly, DraftKings has no answer to *Application Group*, which held that even employees who had "never set a foot in California" before choosing to work for a California

11

competitor are protected by its fundamental policy against non-compete covenants. 61 Cal. App. 4th at 887, 900-02, 72 Cal. Rptr. 2d at 76, 84-86. DraftKings attempts to distinguish *Application Group* (Answer. Br. 48 n.6) by branding Hermalyn's California employer a "sham entity," but nothing in the record supports that characterization. Indeed, the Central District of California rejected this precise argument in remanding the case after one of DraftKings' multiple baseless removals. *See Hermalyn et al. v. DraftKings, Inc.*, 2024 WL 944260, at *1 (C.D. Cal. Feb. 8, 2024). Simply put, FVP, LLC is a legitimate California entity established under the protection of the same fundamental policy that applies to Hermalyn.

DraftKings' hyperbolic assertion (Answer. Br. 48) that applying California law in this case would "mak[e] [it] the *de facto* law of the nation" and allow "competitors and employees nationwide to evade contractual obligations" is misguided. Hermalyn seeks to apply California law only because he is a California resident and employee of a California company now working in California. That hardly turns California law into the law of the nation. DraftKings' position, however, fails to meaningfully acknowledge California's interests in claims against a California resident arising from breaches of restrictive covenants in California, which treats such contracts as void. To adopt that position would effectively *nullify* California's new statutes authorizing that conduct.

12

DraftKings' attempts to elevate Massachusetts' geographic connections fare no better. DraftKings points (Answer. Br. 46-47) to the district court's statement that Hermalyn traveled to Massachusetts occasionally over two and a half years—never having lived or been based there. But DraftKings does not dispute that Hermalyn worked almost entirely out of New York and New Jersey, where he resided, during the employment period. Indeed, DraftKings reveals (Answer. Br. 7) its own discomfort with tying Hermalyn to Massachusetts by describing him as an "East-Coast-based employee." Of course, applying the law of the East Coast is not among the options available to this Court. DraftKings' own reticence to connect Hermalyn with Massachusetts strongly suggests that this Court should not either.

DraftKings also repeats (Answer. Br. 47) its assertion that Massachusetts' geographic connections are more strongly implicated because the "harm" of Hermalyn's alleged breach of the non-*solicit* covenant was felt in Massachusetts. That is doubly flawed. For one, Hermalyn was in California at the time of that alleged breach (where his conduct was legal under California statutes), so any breach did not have a closer connection to Massachusetts than California. A870, Add.26. In any event, an alleged violation of the non-*solicit* covenant is not equivalent to an alleged violation of the non-*compete* covenant, which underlies the only portion of the preliminary injunction that Hermalyn challenges in this appeal.

Relatedly, while DraftKings stresses that it is headquartered in Massachusetts, it does not dispute (Answer. Br. 47) that harms allegedly flowing to the state where an employer is headquartered do not alone give that state a "materially greater interest" in the litigation. *Oxford*, 480 Mass. at 468, 106 N.E.3d at 563-64 (applying California law even though Oxford was headquartered in Massachusetts); *Waithaka*, 966 F.3d at 34-35 (applying Massachusetts law even though Amazon was headquartered in Washington). And while DraftKings reiterates that Hermalyn moved to California "a few days before formally accepting employment at Fanatics," that timing is irrelevant. DraftKings has no answer to the fact that California's law and public policy impose no duration-of-residency requirement, and, indeed, are specifically intended to attract and protect *new* residents and employees like Hermalyn. To the extent the district court adversely relied on the recency of Hermalyn's move, it made the same error. *See* Add.26 (noting that Hermalyn's California residency began "a few days" before he began to work at Fanatics).[3]

---

[3] DraftKings suggests at several points that aspects of the district court's decision are factual findings reviewable for clear error. That is mistaken. *See, e.g.*, *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (holding that "[w]hen reviewing [a] trial court's ruling on a motion for a preliminary injunction"—including analyzing the fundamental policy of a state or determining which state has a materially greater interest—"[w]e review choice-of-law determinations *de novo*" ) (internal quotation marks and citation omitted); *Reicher v. Berkshire Life Ins. Co.*, 360 F.3d 1, 4 (1st Cir. 2004) ("Choice of law determinations are legal questions over which courts of appeal have plenary review … and we accordingly review the issue *de novo*.").

**C.    California Law Would Apply To This Litigation In The Absence Of A Contractual Selection Of State Substantive Law**

DraftKings argues at length (Answer. Br. 29-40) that the third prong of the public-policy exception does not support application of California law because Massachusetts has the most significant relationship to the transaction and parties. *Oxford*, 480 Mass. at 467-69, 106 N.E.3d at 563-64.  DraftKings bases that position primarily on *Ferrofluidics*, but that case is inapposite, as DraftKings likely knew when it declined to cite it in the district court.  DraftKings then argues (Answer. Br. 34-40) that the Restatement factors guiding the most-significant-relationship test must be interpreted based solely on the facts as they existed at the time of contracting, but that is belied by extensive precedent and the factors themselves. Properly applied, the factors demonstrate that California has the most significant relationship and that its law therefore applies despite the contrary contractual selection. *See* Op. Br. 37-38.

1.    Contrary to DraftKings' assertion (Answer. Br. 30-34), this Court's 1992 decision in *Ferrofluidics* does not govern Hermalyn's appeal.  *Ferrofluidics* did not involve the choice-of-law question at issue here.  It instead involved the rule—there arising under New Hampshire choice-of-law principles—that a contractual selection of substantive state law will not be enforced if the selected state "has no substantial relationship to the parties or the transaction." *Ferrofluidics*, 968 F.2d at 1467 (quoting Restatement § 187(2)(a)); *see id.* (alternatively describing the

15

same test as requiring that the selected state has "any significant relationship" to the parties' contract) (citation omitted); *cf. Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 537 (1st Cir. 2021) (applying the same version of that test under Massachusetts choice-of-law principles). That is a different basis for courts to decline to enforce a contractual choice-of-law provision—one that both parties agree is *not* applicable here. Op. Br. 18 n.9; Answer. Br. 28.[4]

DraftKings nonetheless claims that dicta in *Ferrofluidics*—specifically, the Court's discussion of whether California had a "more significant relationship" to the dispute than Massachusetts or New Hampshire, *see* 968 F.2d at 1467-68—mandates that Massachusetts has the most significant relationship to the dispute at issue here. That is wrong for multiple reasons. As an initial matter, Hermalyn is not aware of a case that relies on *Ferrofluidics* to analyze the "most significant relationship" test as an element of the public-policy exception. *Cf. Van Dorn Retail Mgmt., Inc. v. Jim's Oxford Shop, Inc.*, 874 F. Supp. 476, 488 (D.N.H. 1994) (citing *Ferrofluidics* for the proposition that a choice-of-law provision applies if "the contract bears any significant relationship to that jurisdiction"), *aff'd*, 45 F.3d 424 (1st Cir. 1995). In

---

[4]    DraftKings dismisses Hermalyn's citation to *Dahua* in his opening brief as "misplaced" because it applied the "no substantial relationship" test. Answer. Br. 28 n.4 (quoting Op. Br. 19). DraftKings misconceives Hermalyn's basis for relying on *Dahua*. But if DraftKings is correct that cases applying the "no substantial relationship" test are inapplicable here, *id.*, then its lead case—*Ferrofluidics*—is inapplicable too.

addition, *Ferrofluidics* concerned "an employment contract performed in New Hampshire by a New Hampshire employer and a New Hampshire employee throughout the employment period" before the employee moved to California. 968 F.2d at 1468. That is markedly different from the situation here, where DraftKings is a Massachusetts-headquartered employer, but Hermalyn never resided in and only rarely visited Massachusetts for work. The Court in *Ferrofluidics*, moreover, found it "[q]uite true" that California had an interest in the dispute, *id.*, but concluded that California's interest was outweighed by those of New Hampshire and Massachusetts, which far exceed Massachusetts' relationship to the dispute here, *id.*

DraftKings also attempts to extract a categorical rule from the Court's statement in *Ferrofluidics* that a court "must examine the jurisdiction/contract relationship at the time the contract was executed." Answer. Br. 31 (quoting *Ferrofluidics*, 968 F.2d at 1468). DraftKings interprets that sentence to mean that the Restatement factors must be applied *exclusively* in light of the facts as they stand at the time of contracting. *Id.* But that reads far too much into far too little. *Ferrofluidics* itself considered post-contracting events, such as the place of performance of the prior employment agreement and the interest of California arising from the employee's relocation there. 968 F.2d at 1468. DraftKings' quoted language simply means that the facts at the time of contracting may be *relevant* to

17

the most-significant-relationship analysis, not that they are *dispositive* or the only facts that can be considered.

This Court and courts in Massachusetts confirm that the significant relationship test does not turn only on factors relevant at the time a contract is signed. *See, e.g.*, *Viscito v. Nat'l Planning Corp.*, 34 F.4th 78, 85-86 (1st Cir. 2022) (referencing post-contract events including "working relationship" that occurred "outside of Massachusetts" to hold that Florida law applied); *Waithaka*, 966 F.3d at 34 (referencing post-contract events such as the location where the employee performed his work); *Oxford*, 480 Mass. at 468, 106 N.E.3d at 563 (same); *A.M. Capen's Co. v. Amer. Trad. Prod. Corp.*, 74 F.3d 317, 320 (1st Cir. 1996) ("standing alone, the place of contracting is a relatively insignificant contact"); *Hendricks Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209, 213 n.3 (1st Cir. 1991) (considering "[s]ubsequent communications between" the parties, the location where the plaintiff "received payment," and where "delivery of the goods took place").

DraftKings relies on *Bushkin Assocs. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662 (1985), to contend that this framework is static, but *Bushkin* in fact holds *just the opposite*, endorsing a flexible approach based "on the considerations particularly relevant to the case," which might come from "any of the various lists" of pre- and post-contracting factors. 393 Mass. at 634, 473 N.E.2d at 670. Under that framework, "posttransaction events properly may be considered as decision-

influencing contacts … depend[ing] on the particular issue and the circumstances." 393 Mass. at 634, 473 N.E.2d at 670 n.6.  In direct contradiction, DraftKings' position would mean that in almost *no* circumstances could a choice-of-law provision be overridden for public-policy reasons, even though a state other than the state whose law had been selected may have a fundamental interest in the dispute.

In any event, the Restatement factors themselves defeat DraftKings' argument.  "[T]he place of performance," for example, necessarily concerns events that arise *after* contracting.  Restatement § 188(2)(c).  "[T]he location of the subject matter of the contract" (Restatement § 188(2)(d)) meanwhile, may certainly involve post-contracting events, as Massachusetts and other courts hold.  *Oxford*, 480 Mass. at 467, 106 N.E.3d at 563 (citation omitted).  And the parties can certainly change their "domicil, residence, nationality, place of incorporation and place of business," Restatement § 188(2)(e), after contracting.  On the other hand, there would be no need for Restatement factors that expressly contemplate facts *at the time of contracting*, "the place of contracting" and "the place of negotiation of the contract," Restatement § 188(2)(a), (b), if that was the dispositive consideration.  That is why *nothing* in the Restatement contains any language limiting the relevant considerations of the significant relationship test solely to the time of contracting.

**2.** Properly applied, the Restatement factors confirm California is the state with the most-significant relationship to this dispute, and its law would apply in the absence of a Massachusetts choice-of-law provision. Op. Br. 29-32.

DraftKings incorrectly says that several Restatement factors—specifically Sections 6 and 188(2)—point to Massachusetts (Answer. Br. 35-37). But DraftKings does not dispute that "the needs of the interstate and international systems," Restatement § 6(2)(a), require allowing states to manage economic affairs and employee mobility within their own borders, or that "the basic policies underlying the particular field of law," Restatement § 6(2)(e), reflect that states have deep interests in the enforceability of employee residents' out-of-state restrictive covenants, *see* Op. Br. 31. DraftKings instead contends (Answer. Br. 36-37) that the "relevant policies of the forum" and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," Restatement, § 6(b)-(c), weigh in favor of Massachusetts due to its adoption of the MNAA. But that is wrong for the reasons discussed above. *See* pp. 8-10, *supra*. And while DraftKings contends (Answer. Br. 37) that California is not even an "interested state[]," that is not credible. *All* of the authority on California's new statutes, which Hermalyn has detailed at length, shows that California's strong interest was in employees just like him who would move to California, become employed by companies there, and work in the state. *See* pp. 5-10, *supra*.

DraftKings also errs in its analysis (Answer. Br. 35-36) of "the contacts to be taken into account in applying the [above] principles." Restatement § 188(2). DraftKings does not dispute that Hermalyn's "domicil, residence," place of employment, and place of incorporation and business of his employer, *id.* § 188(2)(e), was California when the alleged breaches of the non-compete covenant occurred. And as discussed, DraftKings' Massachusetts headquarters is not dispositive to a choice-of-law determination. *Oxford*, 480 Mass. at 468, 106 N.E.3d at 563-64; *Waithaka*, 966 F.3d at 34-35. Nor does DraftKings dispute that the "place of contracting" and "of negotiation of the [non-compete] contract" was New York or New Jersey as much as it was Massachusetts. *Id.* § 188(2)(a)-(b).

DraftKings contends (Answer. Br. 35-36) that "the location of the subject matter of the [non-compete] contract," Restatement § 188(2)(d), was Massachusetts because Hermalyn occasionally traveled—but was never based—there while working for DraftKings. That is wrong: DraftKings does not dispute that, in the context of alleged breaches of non-compete covenants in California, "the subject matter of the contract" is Hermalyn's "subsequent employment which was, in this case, employment by a competitor who is 'located' in California." Op. Br. 27-28 (quoting *Application Grp.*, 61 Cal. App. 4th at 904, 72 Cal. Rptr. 2d at 87)). For similar reasons, DraftKings is incorrect (Answer. Br. 35) that "the place of performance," Restatement § 188(2)(c), is Massachusetts. The relevant

21

"performance" is the performance *of the non-compete covenant*, not the employment contract as a whole, and DraftKings is expressly demanding performance of that covenant far beyond Massachusetts. *See Oxford*, 480 Mass. at 467, 106 N.E.3d at 563; *Roll Sys., Inc. v. Shupe*, 1998 WL 1785455, at *3 (D. Mass. Jan. 22, 1998).

DraftKings tries (Answer. Br. 38) to render *Oxford* and *Roll* irrelevant on the basis that the former employees in those cases performed their duties for their previous employers while living in California. But that is a mistaken distinction. The court in *Roll* found California had "the more significant relationship to [the former employee's] activities in his *present* employment," not his prior employment, in part because he "continued to work and live in California" after changing jobs. 1998 WL 1785455, at *3 (emphasis added). And in *Oxford*, the SJC found it relevant that the employee had performed his former job functions in California, but did not hold this necessary to California having the more significant relationship to a dispute in general. 480 Mass. at 468, 106 N.E.3d at 564. Both cases, moreover, predated California's enactment of new statutes expressly encouraging employees like Hermalyn to relocate *to* California to work for California employers free of their out-of-state non-compete covenants. DraftKings' position that Hermalyn had to live in

22

California *while* working for DraftKings to avail himself of this express statutory protection is contradicted by the statutes' plain text.[5]

## II.   ANY PRELIMINARY INJUNCTION ENFORCING THE NON-COMPETE COVENANT SHOULD EXCLUDE CALIFORNIA

Even if this Court concludes that the district court correctly applied Massachusetts law, the preliminary injunction should still be narrowed to exclude California. Contrary to DraftKings' assertions (Answer. Br. 51-54), Hermalyn made that argument below, and it is correct: federal equitable principles of comity and federalism require precluding enforcement of non-compete covenants in a state that has expressly outlawed them.

---

[5] DraftKings' position is also contradicted by the Federal Trade Commission's rule banning such non-compete covenants. *See* Op. Br. 16 n.8. DraftKings contends that Mr. Hermalyn will not be covered by the rule when it takes effect because he was a "senior executive" of DraftKings. Answer. Br. 49 n.7. That is mistaken. Hermalyn was never DraftKings' "president, chief executive officer or the equivalent"; considered internally to be a "Vice President" responsible only for a small segment of DraftKings' business, Mr. Hermalyn reported in all matters to his supervisor and lacked "final authority to make policy decisions that control significant aspects of a business enterprise." 16 C.F.R. § 910.1. DraftKings' invocation of the rule's "accrued litigation" exception is similarly misplaced. By its terms, that provision merely preserves any "cause of action" DraftKings possessed against Mr. Hermalyn "prior to the effective date," and ensures that DraftKings may still seek retrospective damages for such claims. *Id.* § 910.3(b). The exception does not, however, allow DraftKings to continue to enforce its invalidated covenants through an injunction *after* the effective date. *Id.*; *see id.* §§ 910.2(a)(ii), (b)(1)-(4), 910.6.

**A.      Hermalyn Preserved His Argument That Any Injunction Should Exclude California**

Contrary to DraftKings' contention (Answer. Br. 51), Hermalyn did not request a narrowed injunction only in the appendix to his opposition to the preliminary injunction.  He devoted an entire *section* of his opposition to this argument, stating "if the Court is inclined to grant some injunctive relief, the Court should significantly narrow DK's overbroad proposed PI."  Dkt. 101 at 30.  The appendix, moreover, expressly proposed narrowing the injunction to exclude California.  A363.  DraftKings responded at length in its preliminary injunction reply brief to the narrowing arguments Hermalyn put forth in his appendix, including his argument that "the geographic scope of the non-compete should be limited."  Dkt. 114 at 15.  Moreover, Hermalyn raised arguments based on comity and conflict with California law in multiple motions, including his motion to dismiss or stay the case, which was filed and considered in tandem with his opposition to the preliminary injunction.  Dkt. 69 at 17-20; *see also* Dkt. 26 at 3, 9.  These multiple instances are more than sufficient to put DraftKings on notice and for Hermalyn to preserve his narrowing arguments.  *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) (preservation "does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue").

**B.     Comity And Federalism Considerations Support Excluding California From The Preliminary Injunction**

Aside from its meritless preservation argument, DraftKings does not dispute that comity and federalism principles require federal courts to exercise "wise discretion to avoid needless friction with state policies" in "shaping equitable remedies." *Montañez-Allman v. García-Padilla*, 782 F.3d 42, 46 (1st Cir. 2015) (cleaned up); Op. Br. 38.   Nor does it dispute that California's new statutes strengthen California's fundamental policy concerns.   Op. Br. 40.   Rather, DraftKings suggests that comity and federalism would apply only if specifically enumerated in the underlying state law.   Answer. Br. 52.   Federal-law principles such as comity and federalism, however, do not function on an opt-in basis; they must be given "appropriate consideration" when "determining the availability and scope of equitable relief." *Rizzo v. Goode,* 423 U.S. 362, 379 (1976).

DraftKings further strains for non-material distinctions in several of the comity cases Hermalyn references, but none is availing.   DraftKings does not dispute the central conclusion in *Barnes*:  that an injunction "clearly sweeps too broadly by including within its obviously intended reach jurisdictions … where the … restrictive covenants are unenforceable." *Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1035 (4th Cir. 1983) (per curiam).   DraftKings posits that *Barnes* is inapplicable (Answer. Br. 54) because the harm from the breach of the non-compete covenant there was felt exclusively in a state where non-compete

covenants are not allowed.  Yet nothing in *Barnes* suggests that harm caused by a non-compete covenant must be felt exclusively in a particular state for a court to consider carving it out from an injunction.  The Eleventh Circuit's decision in *Keener* confirms that courts tailor injunctions to respect state public policies in the context of non-compete covenants.  *Keener v. Convergys Corp.*, 342 F.3d 1264, 1268-69 (11th Cir. 2003).  And the Sixth Circuit's decision in *Herman Miller*, a case DraftKings avoids entirely, reflects similar tailoring of other injunctions.  *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 327 (6th Cir. 2001).

Here, excluding California would respect that state's law and public policy voiding non-compete covenants while allowing the non-compete provision at issue here to be addressed in states that do not have such a policy.  DraftKings claims an all-encompassing non-compete injunction covering California is "necessary" in part to protect its confidential business information and trade secrets.  Answer. Br. 52-53.  But DraftKings does not need a non-compete injunction to protect its confidential and business information.  It has a non-disclosure agreement that the District Court has enforced in a preliminary injunction that Hermalyn is not challenging in this appeal.  This is accordingly a paradigmatic case for narrowing the injunction to promote interstate comity and respect rather than unnecessary interstate conflict.

## CONCLUSION

The provisions of the preliminary injunction enforcing DraftKings' non-compete covenant against Hermalyn should be vacated.  In the alternative, those provisions should be narrowed to exclude California.

Dated:  July 5, 2024

Respectfully submitted,

ALIKI SOFIS
ALEXANDER S. DEL NIDO
ISAAC SAIDEL-GOLEY
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
alikisofis@quinnemanuel.com
alexdelnido@quinnemanuel.com
isaacsaidelgoley@quinnemanuel.com

RUSSELL BECK
STEPHEN D. RIDEN
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

*/s/ Christopher G. Michel*
CHRISTOPHER G. MICHEL
GREGG M. BADICHEK
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
christophermichel@quinnemanuel.com
greggbadichek@quinnemanuel.com

*Counsel for Defendant-Appellant Michael Z. Hermalyn*

27

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(g)</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this document complies as follows:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,202 words (based on the Microsoft Word word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.

Dated: July 5, 2024                    */s/ Christopher G. Michel*
                                        Christopher G. Michel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 5, 2024, I served the foregoing Brief on counsel

for Plaintiffs-Appellees via CM/ECF.

Dated: July 5, 2024                    */s/ Christopher G. Michel*
                                       Christopher G. Michel