# United States Court of Appeals
## For the First Circuit

---

No. 24-1443

DRAFTKINGS INC.,

Plaintiff, Appellee,

v.

MICHAEL HERMALYN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Julia E. Kobick, U.S. District Judge]

---

Before

Kayatta, Thompson, and Montecalvo,
Circuit Judges.

---

Christopher G. Michel, with whom Gregg M. Badichek, Aliki Sofis, Alexander S. del Nido, Issac Saidel-Goley, Quinn Emanuel Urquhart & Sullivan, LLP, Russell Beck, Stephen D. Riden, and Beck Reed Riden LLP were on brief, for appellant.
    Thomas H. Dupree Jr., with whom Jacob T. Spencer, Orin S. Snyder, Harris M. Mufson, Justine M. Goeke, Gibson, Dunn & Crutcher LLP, Mark C. Fleming, William F. Lee, Andrew S. Dulberg, and Wilmer Cutler Pickering Hale and Dorr LLP were on brief, for appellee.

September 26, 2024

**THOMPSON, Circuit Judge**.

## STAGE-SETTING

Massachusetts and California aren't exactly on the same page when it comes to noncompete agreements.

Massachusetts generally *allows* noncompetes if they comply with certain restrictions (for example, employers can't require all employees to sign them (excluded employees include persons aged 18 or younger) and the noncompete period can't last more than a year (except if the employee breached a fiduciary duty to the employer or stole the employer's property, in which case a 2-year cap applies)). See, e.g., Mass. Gen. Laws ch. 149, § 24L(b)(iv), (c). California generally *bans* noncompetes unless they squeeze within one of the few narrow exceptions (like for noncompetes in a business sale or a partnership breakup). See, e.g., Cal. Bus. & Prof. Code §§ 16600(a), 16601, 16602. And that's true "regardless of where and when the contract was signed" and "whether . . . the employment was maintained outside of California." See id. § 16600.5(a), (b).

Today's case plays out against the backdrop of these different policy choices. We streamline the facts and procedural history (rather aggressively) to lay bare the nature of the disputes before us, adding more details later as needed for specific issues (an example of streamlining is our ignoring a

California state-court lawsuit involving some of the same parties as here, because that suit doesn't affect our analysis).

As recently as the beginning of this year, then-New Jersey resident Michael Hermalyn had a plum job with Massachusetts-headquartered DraftKings. But he quit to take a similar job with rival Fanatics's California-based subsidiary, a position (he says) that requires him to live and work in Los Angeles. DraftKings and Fanatics (for anyone who hasn't seen their ads) are sports betting and online gaming companies (a description that simplifies things a bit but is enough for now).

DraftKings thought (among other concerns) that Hermalyn's new post violated a noncompete he had signed before quitting — an agreement that had a Massachusetts choice-of-law proviso and a one-year noncompete clause. So DraftKings sued him in Massachusetts federal court for breach of the noncompete (along with other claims not relevant here).

Everyone seems to agree (at least for present purposes) that if the noncompete is enforceable, Hermalyn breached it by joining Fanatics. Not surprisingly then, DraftKings asked the district judge to use Massachusetts law and Hermalyn asked her to use California law. Siding with DraftKings, the judge — after using Massachusetts law — ruled the noncompete enforceable and preliminarily enjoined Hermalyn from competing against DraftKings

in the United States for one year (she did reject DraftKings's request for a worldwide injunction, however).

Hermalyn then filed this interlocutory appeal, see 28 U.S.C. § 1292(a)(1), making two alternative arguments.  The first is that the judge wrongly held that Massachusetts law governed the enforceability of the noncompete.  The second is that if Massachusetts law does govern, then the judge should've excluded California from the preliminary injunction's scope.

Having considered the matter on an expedited basis, we let the challenged order stand.  Read on to learn why.

**CHOICE OF LAW**

*Standards of Review*

We examine the judge's preliminary-injunction grant for abuse of discretion.  See We the People PAC v. Bellows, 40 F.4th 1, 9 (1st Cir. 2022); NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020).  Within that system, however, we inspect legal questions (like which state's law applies) *de novo* and findings of fact for clear error.  See NuVasive, 954 F.3d at 443.  On abuse-of-discretion review, we defer to the judge if she didn't make an obvious mistake of judgment (a material legal misstep is a *per se* abuse of discretion, for example).  See We the People PAC, 40 F.4th at 25.  But on *de novo* review, we give *no* deference to what the judge thought, see Berge v. Sch. Comm. of Gloucester, 107 F.4th 33, 39 n.8 (1st Cir. 2024) — not because we're better or smarter

than our district-court colleagues (we aren't!) but because of the "institutional advantages" we have over them (including sitting on multi-member panels, a process that "permit[s] reflective dialogue and collective judgment" and so "promotes decisional accuracy"), see Salve Regina Coll. v. Russell, 499 U.S. 225, 232, 233 (1991).[1]

### *Massachusetts Law*

Because — as the parties agree — diversity jurisdiction exists over the breach-of-noncompete claim, the "forum" of Massachusetts (where DraftKings sued Hermalyn) sets the rules for which state's law decides the noncompete's enforceability (even though the noncompete itself picked Massachusetts).  See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). See also generally Smith v. Gen. Motors LLC, 988 F.3d 873, 879 n. 5 (6th Cir. 2021) (explaining that "even contracts that contain choice-of-law clauses are themselves analyzed under some state's law should a controversy arise over the validity of that clause itself").  So on to Bay State law then.

---

[1] Hermalyn seemingly implies that our review of facts underlying a choice-of-law ruling isn't for clear error (to the extent anyone challenges the findings, of course), but remains *de novo*.  He cites no on-point case that says so, however (his relied-on decisions say that we review a choice-of-law ruling de novo, but don't say that the facts behind the ruling get something other than clear-error treatment).  And that's probably because the Federal Reporter is filled with opinions explaining our "usual" tradition of inspecting fact-findings for "clear error."  See, e.g., Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 45 (1st Cir. 2008).

Massachusetts usually respects the parties' choice of law.  See NuVasive, 954 F.3d at 443; see also Oxford Glob. Res., LLC v. Hernandez, 106 N.E.3d 556, 564 (Mass. 2018); Feeney v. Dell Inc., 908 N.E.2d 753, 766 (Mass. 2009).  But exceptions exist, each driven by public-policy concerns (the term "usually" in the last sentence was a tipoff about exceptions).  See Oxford, 106 N.E.3d at 564.  And the exception Hermalyn invokes requires him to show that (i) "application of" Massachusetts law "would be contrary to a fundamental policy of" California; (ii) California "has a materially greater interest than" Massachusetts "in the determination of the . . . issue"; and (iii) California is the state whose law would control "in the absence of an effective choice of law by the parties" — *i.e.*, that California has "the most significant relationship to the transaction and the parties."  See id. at 563-64 (brackets and quotation marks omitted); see also NuVasive, 954 F.3d at 444.

The word linking the above-listed requisites is "and," *not* "or."  Which means Hermalyn must satisfy *all* of them to get anywhere.  See NuVasive, 954 F.3d at 444; see also Feeney, 908 N.E.2d at 766-67.  But he can't satisfy the materially-greater-interest requisite (as we explain next), thus dashing his hopes of winning the issue (even assuming *without deciding* that he could satisfy the others).  See Down-Lite Int'l, Inc. v. Altbaier, 821 F. App'x 553, 555 (6th Cir. 2020) (stressing that that court only

had to "examine the materially-greater-interest prong to show why [it] will not upset the parties' choice-of-law provision"). See also generally Commodity Futures Trading Comm'n v. Zelener, 373 F.3d 861, 868 (7th Cir. 2004) (Easterbrook, J., for the court) (stating that sometimes it's "[b]est to take Occam's Razor and slice off needless complexity"); PDK Lab'ys. Inc. v. U.S.D.E.A., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (noting that "if it is not necessary to decide more, it is necessary not to decide more").

### *Arguments and Analysis*

The centerpiece of Hermalyn's argument is that Oxford — an opinion by the Massachusetts Supreme Judicial Court ("SJC") — makes the materially-greater-interest issue open-and-shut in *his* favor. That's because, he continues, Oxford held that a Massachusetts choice-of-law clause there couldn't "survive" since California's interest in not enforcing the contract — a "Confidentiality, Non-Solicitation and Non-Competition Agreement," see 106 N.E.3d at 561 n.3 — *was* "materially greater" than Massachusetts's interest in enforcing it, see id. at 564. And applying Oxford evenhandedly, he submits, entitles him to a victory here.

Unfortunately for Hermalyn, Oxford can't do the work that he asks of it.

In pressing his Oxford-centric arguments, Hermalyn mentions how "California" is "where [he] currently resides, works, and allegedly breached the non-compete covenant." But Oxford held that "California ha[d] a materially greater interest than Massachusetts" there "*because*" the employee Hernandez had "executed" *and* "performed" the contract with his Massachusetts-based former employer Oxford "in California," *and* had "allegedly committed a breach of the agreement in California" after he quit and joined a California competitor, id. at 566 (emphasis added) — Hernandez (you see) lived and worked in California before and after he "allegedly violated" the agreement's "nonsolicitation and confidentiality provisions," id. at 560, 569-70.  Plus Oxford also noted that the "subject matter of the contract — *Hernandez's employment with Oxford* — [had been] located *exclusively* in California."  Id. at 563 (emphases added).  Hermalyn's facts are not like Hernandez's.  According to what the judge here found — and we see no convincingly developed argument contesting her findings as reversible error — (i) while "Hermalyn primarily worked for [Massachusetts-headquartered] DraftKings from New Jersey and New York, he traveled to Massachusetts for work at least 25 times" during a 2½-year stretch before leaving for Fanatics — which roughly comes to "once every [6] weeks"; (ii) "Hermalyn does not contend, nor is there evidence, that he performed any of his work responsibilities for DraftKings from California"; and (iii) "[a]ny

- 9 -

harms flowing from Hermalyn's likely" noncompete breach "will be felt by DraftKings in Massachusetts, not California."  Given the dissimilarities between Oxford and our case, Hermalyn's Oxford-based arguments sputter out.[2]

Hermalyn is right about one thing, however.  Oxford did say that California's "legislative[ly]" declared "policy" interest "in favor of open competition and employee mobility" was "materially greater" than Massachusetts's — a state, Oxford added, that lacked a "statute akin" to California's.  See 106 N.E.3d at 564-65 (quotation marks omitted).  But "a paradigm shift" occurred when Massachusetts passed a law — the Massachusetts Noncompetition Agreement Act ("MNAA") — that "dramatically reduc[ed] the number of Massachusetts employees who can be subjected to . . . enforceable" noncompetes, while giving those exposed to them

---

[2] For similar reasons, Hermalyn gets no help from DCS Sanitation Mgmt., Inc. v. Castillo, 435 F.3d 892 (8th Cir. 2006), Cardoni v. Prosperity Bank, 805 F.3d 573 (5th Cir. 2015), and Waithaka v. Amazon.com, Inc., 966 F.3d 10 (1st Cir. 2020).  DCS held that Nebraska had a materially greater interest than Ohio (the contractual choice-of-law state) in the matter because (among other things) the employees lived and worked in Nebraska before and after the alleged noncompete breaches.  See 435 F.3d at 896-97.  Cardoni ruled that Oklahoma had a materially greater interest than Texas (the contractual choice-of-law state) in the matter because (among other things) the employees worked in Oklahoma before and after the alleged breach.  See 805 F.3d at 576-78, 584.  And Waithaka noted that Massachusetts had a materially greater interest than Washington (the contractual choice-of-law state) in the matter because the worker "indisputably performed all of his work pursuant to the contract" in Massachusetts.  See 966 F.3d at 34.  Compare those cases with Hermalyn's and the differences are night and day.

"stronger substantive and procedural protections than in the past" and also "limit[ing]" employers "to substantially reduced post-employment restrictions." See Jerry Cohen *et al.*, *Employee Noncompetition Laws and Practices: A Massachusetts Paradigm Shift Goes National*, 103 Mass. L. Rev. 31, 31 (2022).

　　　　The MNAA was no off-the-cuff, spur-of-the-moment bit of legislating either. Far from it. The law "gestat[ed]" during a *decade's* worth of legislative study and debate. See id. Interestingly — and we think tellingly — a Massachusetts legislator actually "propose[d] a bill to *completely ban*" noncompetes back "in 2009," see id. at 53 (emphasis added), a bill "modeled" after "*California*" law, see Will Brownsberger, *A Study in Persistence and Compromise* (Aug. 13, 2018), https://willbrownsberger.com/a-study-in-persistence-and-compromise-legislation-regulating-agreements-not-to-compete/[https://perma.cc./DBV6-VXMH] (emphasis added) (stating that "the venture capital community" thought that "California's prohibition of [noncompetes] was a major reason for California's dominance in technology entrepreneurship"). Concerned Bay State business leaders then stressed how "essential" noncompetes are "for protecting the ideas that they had developed through great effort." See id. And they "promised to leave the state if [his] legislation passed." See id. That bill ultimately went nowhere, however. See id. But after years and *years* of legislative give-and-take, "a *hard fought compromise*" emerged that

"bann[ed]" noncompetes "for lower level workers, limit[ed] them for higher level workers[,] and provid[ed] procedural protections to assure that workers know what they are getting into when they sign them." See id. (emphasis added); see also Cohen *et al.*, supra, at 32-33 (discussing the history of the bill's enactment).

The MNAA became law in August 2018, just days before the SJC's September 2018 Oxford ruling. See 2018 Mass. Legis. Serv. ch. 228, § 71. But the MNAA applies only to noncompetes "entered into on or after *October 1, 2018*."[3] See id. (emphasis added). Which explains why Oxford never even hinted that the MNAA played *any* role there. And which also shows that Oxford had in mind the state of law *before* the MNAA when it talked about California's interest being "materially greater" than Massachusetts's — *not* the state of the law *after* the MNAA.

Perhaps anticipating some of these points, Hermalyn notes that Oxford "predate[s]" California's 2024 passage of laws reinforcing its deep-rooted policy against restraint of trade.[4] But the fact still remains that Oxford — which (as we said) acknowledged California's "*settled* legislative policy" of promoting "open competition and employee mobility," see 106 N.E.3d

---

[3] Hermalyn's noncompete specifically cites to the MNAA.

[4] The drafting committee for these statutes conceded that while they "express[ed] California's strong desire to enforce its public policy," they "cannot dictate to courts outside of its jurisdiction."

at 564 (quotation marks omitted and emphasis added) — ran the materially-greater-interest analysis *without* having to factor in the MNAA (because (again) the MNAA wasn't in play there).

Still looking for a winning argument, Hermalyn writes that "the MNAA did not purport to abrogate Massachusetts law as discussed and understood in Oxford," quoting for support this snippet from the Massachusetts Law Review article mentioned above: the MNAA "codified aspects of the common law that will continue to require case-by-case exposition." See Cohen *et al.*, supra, at 31. Hermalyn's point seems to be that the MNAA didn't change Bay State "law or policy of limited tolerance towards non-compete covenants." But the article's animating thesis — revealed in the following excerpts (we quoted some of them a few paragraphs back) — couldn't be any clearer: the MNAA "represents a *paradigm shift* in *favor* of *employees*" that "dramatically reduc[ed] the number of Massachusetts employees who can be subjected to . . . enforceable" noncompetes, while offering those covered by them "stronger substantive and procedural protections than in the past" and likewise "limit[ing]" employers "to substantially reduced post-employment restrictions." See id. (emphases added). Which scotches Hermalyn's attempt to downplay the MNAA's significance.[5]

---

[5] Roll Sys., Inc. v. Shupe, No. CIV.A.97-12689, 1998 WL 1785455 (D. Mass. Jan. 22, 1998) — cited by Hermalyn — doesn't compel a different result. Highlighting California's "fundamental policy against the enforcement of [broad] restrictive covenants,"

- 13 -

Given this tableau — involving (among other features) two states passing laws reflecting different but careful balances of conflicting forces in the noncompete area (after the usual push-and-pull of politics), with Massachusetts opting *not* to mimic California's ban and instead generally allowing noncompetes for higher-level employees like Hermalyn (who unlike lower-level employees often have business-sensitive info and deep ties with company customers) — we can't say that Hermalyn has shown (as he was required to do) that California's "interest" in pursuing its policy is not just "greater" than Massachusetts's, but is "materially" so. See Down-Lite, 821 F. App'x at 556 (acknowledging that "California has a meaningful interest in protecting its resident from" his Ohio-based former employer's "desire to restrict competitive conduct," but holding that "that interest is not materially greater than Ohio's interest in protecting one of its closely held businesses operating in the global economy").[6]

---

see id. at *2, Roll Sys. "disregard[ed]" a Massachusetts "choice-of-law provision in the contract and appl[ied] California law instead," in a case involving a preliminary-injunction dispute pitting an employee and his current employer against his former employer, see id. at *1-3. But Roll Sys. came many years *before* the MNAA. Which — whatever else may be said about Roll Sys. — is enough to distinguish that case from Hermalyn's.

[6] DraftKings makes many of the same points about Massachusetts's public policy on noncompetes. Unimpressed with DraftKings's effort, Hermalyn blasts the company for "mak[ing] no headway in attempting to equate Massachusetts'[s] policy interests with California's." But his protest ignores that *he* (not DraftKings) had to show (as the above-text explains) not just that California's interest equals Massachusetts's, or even that it's

Or to put it differently but with the same result, he hasn't shown that "California's public policy" eclipses "the parties' clear and unambiguous agreement to apply [Massachusetts] law." See id.[7]

### *Wrap-Up*

The short of it is that the judge didn't err by ruling that Massachusetts law governs Hermalyn's noncompete with DraftKings.[8]

## SCOPE OF THE PRELIMINARY INJUNCTION

### *Standard of Review*

Judges must closely tailor injunctive relief to the specific harm alleged. See, e.g., Vaquería Tres Monjitas, Inc. v.

---

greater than Massachusetts's, but that it's *materially greater* than Massachusetts's. Which (again) he hasn't done.

[7] Application Grp., Inc. v. Hunter Grp., Inc., 72 Cal. Rptr. 2d 73 (Cal. Ct. App. 1998), isn't a difference-maker for Hermalyn either — despite what he thinks. Application did hold that California had a materially greater interest in noncompetes than Maryland (the contractual choice-of-law state). See id. at 76, 86. But there — *unlike here* — "[t]here [was] no showing that [the employee] was attempting to exploit [the former employer's] trade secrets or other protected information," see id. at 86, a distinguishing point raised in DraftKings's answering brief without contradiction from Hermalyn in his reply brief. Also making this case worlds apart from Hermalyn's is that (as we just said) Application addressed whether California had a materially greater interest in noncompetes than *Maryland*, not *Massachusetts*.

[8] Hermalyn writes that "[s]eparate and apart from the grounds outlined in []his brief, enforcement of" the noncompete "will also be precluded by the recently promulgated Federal Trade Commission . . . rule barring most" noncompetes. But he adds that he hasn't "sought relief based on th[at] rule" since it's not yet in "effect." See generally Ryan, LLC v. Fed. Trade Comm'n, No. 3:24-CV-00986-E, 2024 WL 3879954, at *14 (N.D. Tex. Aug. 20, 2024) (concluding that because the commission lacked the power to issue

Irizarry, 587 F.3d 464, 487 (1st Cir. 2009).  And because they're uniquely placed to design "the scope of injunctive relief to [their] factual findings," we review only for abuse of discretion. See, e.g., id.

### *Arguments and Analysis*

We can make quick work of Hermalyn's alternative position:  that if Massachusetts law controls DraftKings's bid to enforce the noncompete, then the judge (under "comity and federalism" principles) had to — but didn't — exclude California from the preliminary injunction's scope given California's strong "public policy barring the enforcement of such [agreements] against California employees of California companies working in California."  We sidestep DraftKings's claim that Hermalyn waived or forfeited this argument because as DraftKings also contends, his argument fails regardless.

Starting with Hermalyn's public-policy point, we've already explained above why California's policy can't override Massachusetts's.  And the cases he champions — Barnes Grp., Inc. v. C & C Prods., Inc., 716 F.2d 1023, 1035 (4th Cir. 1983), Keener v. Convergys Corp., 342 F.3d 1264, 1268-69 (11th Cir. 2003), and Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc., 270 F.3d

---

that rule, "the [r]ule shall not be enforced or otherwise take effect" anywhere nationwide "on its effective date of September 4, 2024").  So we needn't say anything more on that subject.

298, 327 (6th Cir. 2001), where reviewing courts narrowed an injunction's reach — don't move the needle either. Our reasons for thinking so are simple. (i) California outlaws online sports betting. See Tak Chun Gaming Promotion Co. v. Long, 314 Cal. Rptr. 3d 890, 897 (Cal. Ct. App. 2023). (ii) But a big part of Hermalyn's job is creating and keeping relationships with digital-gaming customers. (iii) So if he can join Fanatics in Los Angeles straightaway, he'll inevitably interact with clients *outside* California where online sports betting is legal. (iv) Clearly his requested California carveout will give him a way to skirt the countrywide preliminary injunction's one-year noncompete ban. (v) And returning to his trio of cases with all this in mind, we note that none covers a situation like ours — where lopping a state off a USAwide preliminary injunction on a one-year noncompete would entirely undercut that injunction's effectiveness. (vi) Which goes to show that those cases hold no sway here. DraftKings made each of these romanette-numbered points about the injunction's breadth in its answering brief, with *no* pertinently persuasive push back from Hermalyn in his reply brief.

### *Wrap-Up*

The bottom line is that the judge didn't err by including California within the preliminary injunction's range.

### LAST WORDS

All that's left to say is: *affirmed, with appellate costs to DraftKings.*